**Cliff THONEN, et al., Plaintiffs,**

v.

**McNEIL–AKRON, INC., et al., Defendants.**

**Civ. A. No. C85–1066A.**

United States District Court, N.D. Ohio, E.D.

April 17, 1987.

See also, 661 F.Supp. 1252.

Mark A. Rock, Joyce Goldstein, Schwarzwald, Robiner, Wolf & Rock, Cleveland, Ohio, for plaintiffs.

Clair E. Dickinson, John C. Fickes, John W. Solomon, Sidney Foster, Jr., Akron, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

The parties to this action have jointly moved this Court for approval of their settlement agreement. Because a class of plaintiffs has been certified in this action, such approval of the compromise is required by Fed.R.Civ.P. 23(e). For the reasons set forth below, this Court approves the settlement agreement and enters judgment as requested by the parties.

### I.

This action was brought by Cliff Thonen, Ralph Hannaman, Clarence W. Archer, and Joseph Maxim to resolve a dispute over health insurance benefits negotiated for inclusion in two collective bargaining agreements. They sought to compel defendants McNeil Corporation, Equipement Méchaniques Specialisés ("EMS"), and McNeil-Akron, Inc. ("McNeil-Akron") (together, "the company") to resume providing for company bargaining unit employees who retired between May 7, 1979 and December 31, 1983 the type of health insurance benefits established for retirees in the relevant 1979 and 1982 collective bargaining agreements. The complaint indicated that the company's liability was premised upon the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (1982 & Supp. III 1985), and upon breach of the labor contracts, stating a claim under § 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185 (1982).

The parties filed cross-motions for summary judgment on the issue of liability. The plaintiffs contended that the company had breached the collective bargaining agreements by altering the retiree health benefit plan, because the plans negotiated in conjunction with the 1979 and 1982 contracts provided for lifetime benefits. They also argued that the company's conduct with respect to the retiree health benefits violated fiduciary duties placed upon it by ERISA. The company denied that the collective bargaining agreements created lifetime health benefits of a certain type for retirees. It further argued that if contractual rights to lifetime benefits did exist,

they were waived by all retirees except Thonen and Hannaman, because all except those two had executed accord and satisfaction agreements. By a memorandum and order of July 24, 1986, this Court held that the company had breached plaintiffs' contractual rights to lifetime retiree health benefits, and it enjoined the company to provide plaintiffs with the contractually required health benefit plan. It granted the company's motion for summary judgment on the issue of ERISA liability, except that plaintiffs Hannaman and Thonen were granted summary judgment in their favor on that issue.

While the complaint averred that plaintiffs wished to represent a class of persons who retired from the company between May 7, 1979 and December 31, 1983, plaintiffs did not move to certify the proposed class before the summary judgment motions were determined. On August 4, 1986, plaintiffs filed a pending motion to maintain class action and for certification of class under Fed.R.Civ.P. 23(b)(3) ("Rule 23(b)(3)"). By a memorandum and order of August 28, 1986, this Court certified a class consisting of all former bargaining unit employees of defendants who retired between May 7, 1979 and December 31, 1983, excluding Thonen and Hannaman. It held that Archer and Maxim were proper representatives of this class.

## II.

At a hearing in open court on April 9, 1987, the parties described their proposed settlement and the steps leading to the hearing. They indicated that serious settlement negotiations began after the class had been certified, resulting in an offer by the defendants. This offer was discussed by plaintiffs' counsel at a meeting of the McNeil-Akron Retirees Club, a group consisting of bargaining unit employees who retired before May 7, 1979, and management retirees, as well as class members. The consensus of that large group was that those present would be willing to pay small premiums for their health insurance if: (1) the benefits were guaranteed for their lives; (2) surviving spouse coverage were continued; and (3) the terms of the settlement would include the same coverage for the pre-May 7, 1979 bargaining unit retirees and the management retirees. Only Thonen and Hannaman objected to that proposal.

The company agreed to this counter-offer of the plaintiffs. As a result, notices were mailed to all class members on February 17, 1987. No class member elected to opt out of the settlement, and only one plaintiff objected. Eugene Labut indicated that he believed that the retirees should not be required to pay any premiums for their health care coverage, but he did not opt out of the class. No class member attended the hearing in order to object to the settlement proposal.

The settlement proposal provides that McNeil-Akron and EMS will provide health insurance coverage established by Article XVI, § 4 of the 1979 and 1982 collective bargaining agreements for Thonen and Hannaman for the remainder of their lives. All former bargaining unit and management employees who retired on or before December 31, 1983, will receive insurance coverage under the current health insurance program for the remainder of their lives and, if the former employee dies, coverage will be provided for his or her spouse for the remainder of the spouse's life.

At the hearing, plaintiffs' counsel indicated that he believes that the relief obtained in the settlement is at least equivalent to the maximum recovery which plaintiffs could expect. He stated that this Court's ruling on the ERISA claims, granting summary judgment to defendants against all plaintiffs except Thonen and Hannaman, probably precludes punitive damages. As a result, only contractual damages remained to be compensated (in addition to the restoration of health benefits for life), and the contractual damages were not substantial.

Plaintiffs' counsel indicated that the payments to Thonen and Hannaman were to compensate them for pain and suffering and for reimbursement of medical expenses they had incurred. Defendants' counsel

added that these plaintiffs had stated that they sometimes had failed to receive desirable medical care because they were uninsured, and that the settlement payment was meant by the company to compensate them for this situation.

Finally, plaintiffs' counsel explained that McNeil Corporation was excused from the settlement because its status as a defendant was questionable. EMS had apparently assumed responsibility for such liability of McNeil Corporation by agreement as part of a sale of assets, and the union may have waived its right to relief from McNeil Corporation when it acceded to the sale of assets. A small percentage of the class members had retired while McNeil Corporation owned the assets of the McNeil-Akron Division.

### III.

■ In this circuit, a three-step procedure for approval or disapproval of a class action settlement has been adopted. The settlement shall first be preliminarily approved by the court. Then notice must be given to interested persons. Finally, the court must decide whether the settlement agreement is reasonable after having held a hearing. *Williams v. Vukovich*, 720 F.2d 909, 920–21 (6th Cir.1983) (citing *Stotts v. Memphis Fire Department*, 679 F.2d 541 (6th Cir.1982), *rev'd on other grounds*, 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984)).

Following this Court's ruling on the issue of liability and the class certification, the Court participated in settlement discussions with the parties as part of a status conference. In early 1987, the parties reached an agreement which would provide the class members with the insurance coverage ordered by this Court. Although class members would be required to pay a small premium for this coverage, the health benefits were guaranteed to continue throughout the lives of the class members and their surviving spouses. On February 17, 1987, notices describing the settlement, the class members' opportunities to examine the pleadings and to object to the settlement, and the class members' right to opt out of

the litigation, were mailed to the class members. Ten of the approximately eighty notices were returned, but all except one class member were sent new notices that were not returned. Since the second notices were mailed on March 17, 1987, all class members had an adequate amount of time to opt out, object to the settlement, or attend the April 9th hearing. *See Williams*, 720 F.2d at 921 (requiring that all plaintiffs have an opportunity to consider the settlement and formulate a response, and suggesting that two weeks would be the minimum period between notice and the reasonableness hearing).

■ The reasonableness determination involves three considerations: the fairness to persons affected by the settlement; the adequacy to the class; and the public interest. *Williams*, 720 F.2d at 921. The proposal is obviously fair to non-class members, since bargaining unit employees who retired before May 7, 1979 and management employees who retired on or before December 31, 1983 will receive the same health care coverage as the class members—a tremendous improvement in their health care situations.

Evaluating the adequacy of the settlement for the class requires the consideration of numerous factors. The *Stotts* court stated:

> Ordinarily, the following factors will be considered: 1) the complexity, expense and likely duration of the litigation; 2) the stage of the proceedings and the amount of discovery completed; 3) the risks of litigation; 4) the resources of the defendant; and 5) the reasonableness of the settlement in light of the best possible recovery.

679 F.2d at 552. The court must also determine whether the interests of counsel and the class representatives are advanced at the expense of the unnamed class members. *Williams*, 720 F.2d at 923. Objections of the class must be carefully weighed. *Id.* However, "[t]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Id.* at 922–23.

In this litigation, plaintiffs have already progressed far and have obtained judgment on liability in their favor. However, this litigation would by no means end if the settlement were not consummated. In addition to determining damages, plaintiffs face an appeal, fraught with danger of losing lifetime health benefits if the appellate court were to reverse this Court's decision. An appeals process is also lengthy, and the elderly plaintiffs would face uncertainty about insurance benefits so critical to their financial security if the court of appeals stayed this Court's decision. Besides avoiding these undesirable effects of an appeal, the class members will receive benefits which are substantially similar to the best recovery they could have hoped for. Although they will pay premiums, they will be assured of lifetime benefits, which has apparently been the prime motivation for this lawsuit. The defendants' resources do not appear to be limitless, and the class would not be likely to receive a larger settlement.

The named plaintiffs and plaintiffs' counsel will not benefit at the expense of the remainder of the class. The stated basis for payment to Thonen and Hannaman is reasonable, and the propriety of this payment is enhanced by the decision of these plaintiffs to reject surviving spouse coverage. The amount of attorneys' fees to be paid to plaintiffs' counsel is moderate for the amount and the quality of work performed. Plaintiffs' counsel's reasons for dismissing McNeil Corporation are sensible, and this dismissal is without prejudice in consideration of the possibility that another deep pocket defendant must be found.

The lack of objections and opt-outs by the class also indicates that the relief is adequate. The notice clearly set forth the manner to remove oneself from the class or object to the settlement, but only Mr. Labut took either of these steps. Mr. Labut's only objection is that he believes that he should receive the benefits of the health insurance plan established by the collective bargaining agreements without paying premiums. "A court may not withhold approval simply because the benefits accrued

from the [settlement] are not what a successful plaintiff would have received in a fully litigated case." *Williams*, 720 F.2d at 922. This Court is in agreement with the judgment of plaintiffs' counsel that this settlement provides adequate relief to the class.

The public interest is obviously served by this settlement. The voluntary resolution of this case reduces the delay, expense and anxiety associated with an appeal. Retired workers are assured that adequate health care insurance will be available to them whenever it is needed, and that after their deaths their spouses will be protected. The company can stabilize its financial condition by limiting its large exposure for liability and by saving attorneys' fees. Even retirees not parties to this action are benefited.

■ Having analyzed the factors designated by the Sixth Circuit, this Court is convinced that this settlement is a reasonable one. This settlement is similar to the compromise found to be reasonable in similar circumstances in *Eardman v. Bethlehem Steel Corporation Employee Welfare Benefit Plans*, 607 F.Supp. 196 (W.D.N.Y. 1984). In that case, the district court had held after an evidentiary hearing that plaintiffs were entitled to non-terminable medical insurance benefits under the terms of a labor contract, and it ordered the defendant to return any premiums which plaintiffs had paid under a new health insurance plan substituted by the company. A stay of the court's order to immediately restore the initial insurance plan was granted pending appeal. The parties then negotiated a settlement. The court found the settlement to be reasonable, stating:

The possibility of one or more appeals in this case and further protracted litigation has been eliminated and plaintiffs have achieved security regarding their health care and life insurance coverages while agreeing to pay relatively modest premiums for rather comprehensive health care coverage containing limited deductible levels that will be incurred by them. As expected regarding any settlement of a legal action, both parties chose to make

reasonable concessions in order to avoid the risks, anxiety and expenses that would have resulted from further litigation.

*Id.* at 216. The court was not persuaded by several objections from class members not desiring to pay premiums for their benefits, since the benefits provided by the settlement would be received for life and could not be altered or terminated by the company. The settlement also resolved the possibility that the company could terminate the benefits at whim if its position were accepted by an appellate court. *Id.* at 217. The settlement found to be reasonable in *Eardman* is even more acceptable in this case, for class members in this action were permitted to opt out, while the class in *Eardman* had been certified pursuant to Fed.R.Civ.P. 23(b)(2).

### IV.

This Court concurs that plaintiffs could hardly expect to materially improve their relief by proceeding with this litigation at great risk and expense. Accordingly, the joint application for approval of the settlement agreement is granted. Judgment shall be entered as provided by the settlement agreement.

IT IS SO ORDERED.